**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| EUCLID MARKET INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:19-cv-02136 MTS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Euclid Market, Inc. ("Euclid Market" or "the Market") operates a store in St. Louis, Missouri where it sells groceries, tobacco products, lottery tickets, and various other sundries. The Market was an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP" or "the Program") administered by the United States Department of Agriculture ("USDA" or "the Agency") until the USDA charged the Market with trafficking SNAP benefits.

After the USDA determined that the Market had indeed committed trafficking violations, and later sustained that determination in an administrative review, Euclid Market timely filed suit in this Court against the United States seeking judicial review of the USDA's decision. The United States now has moved for summary judgment, Doc. [35]. The Motion is fully briefed and ready for adjudication. For the reasons explained below, the Court will deny the Motion.

**I.    Background**

The USDA administers SNAP to provide nutrition benefits to needy families through an Electronic Benefit Transfer (EBT) card with which the recipient may purchase eligible food from authorized retailers. Retailers wishing to become authorized to accept SNAP benefits must apply and, if they meet the requisite qualifications, will receive a nontransferable certificate of approval.

1

*See* 7 U.S.C. § 2018. Once authorized as a retailer, the establishment can accept SNAP participants' EBT cards for their purchase of "food or food product intended for human consumption except alcoholic beverages, tobacco, and hot foods and hot food products prepared for immediate consumption . . . ." 7 C.F.R. § 271.2.

Unfortunately, in years past, the USDA has estimated that $858 million per year is trafficked[1] by SNAP recipients and retailers. *See Argus Leader Media v. U.S. Dep't of Agric.*, 740 F.3d 1172, 1174 (8th Cir. 2014). The Agency estimates that approximately ten percent of authorized retailers engage in this trafficking. *Id.* Congress authorized the USDA to permanently disqualify a retailer from participating in the Program upon the first occasion of trafficking. *United States v. J & K Mkt. Centerville, LLC*, 679 F.3d 709, 712 (8th Cir. 2012) (citing 7 U.S.C. § 2021(b)(3)(B)). In an effort to root out trafficking retailers, the USDA uses the immense data it has amassed regarding SNAP usage to find and investigate anomalies that indicate a specific retailer may be trafficking benefits. *See* 7 C.F.R. § 278.6(a).

On February 4, 2019 the Retailer Operations Division of the USDA charged Euclid Market with trafficking based on what it described as EBT transactions with "clear and repetitive patterns of unusual, irregular, and inexplicable activity" that occurred between April and September 2018. Doc. [37-1]. Specifically, it noted three types of these patterns that, according to the USDA, indicate trafficking occurrences. First, there were an unusual number of transactions ending in the same cents value, ninety-eight cents. In total, eighteen transactions greater than $70 and totaling $1,767.64 all ended in ninety-eight cents. Second, multiple transactions were made by the same household in a short time period. Twenty-seven sets of fifty-six transactions totaled $2,702.16.

---

[1] "Trafficking" is defined in part as the "buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone." 7 C.F.R. § 271.2.

Lastly, eighty excessively large SNAP transactions totaling $7,780 were made that were inconsistent with what the USDA called the nature and extent of the Market's stock and facilities.

The Market disputed the charges and submitted a written response, photographs, vendor invoices, select cash register receipts, and its retail food markup. The Retailer Operations Division reviewed the evidence and issued a determination letter permanently disqualifying the Market from the Program in accordance with 7 C.F.R. §§ 278.6(c) and (e)(1). The Market timely requested an administrative review of the Division's disqualification. The USDA issued a final agency decision sustaining the Division's decision to impose a permanent disqualification against the Market. The Market timely brought suit in this Court under 7 U.S.C. § 2023, and the government now seeks summary judgment.

## II. Standard

A district court reviews the permanent disqualification from the Program through "a trial de novo" to "determine" the administrative action's "validity." 7 U.S.C. § 2023; 7 C.F.R. § 279.7. In a trial de novo, the Court will "reach its own factual and legal conclusions based on the preponderance of the evidence, and [will] not limit its consideration to matters previously appraised in the administrative proceedings." *Sims v. U.S. Dep't of Agric. Food & Nutrition Serv.*, 860 F.2d 858, 862 (8th Cir. 1988). The Court, in other words, will "'make an independent determination of the issues.'" *Ghattas v. United States*, 40 F.3d 281, 286 (8th Cir. 1994) (quoting *United States v. First City Nat'l Bank of Houston*, 386 U.S. 361, 368 (1967)).

Though a disqualified retailer is entitled to a trial de novo to determine the validity of the disqualification, the retailer bears the burden of proof. *Haynes v. U.S. Dep't of Agric., Food & Nutrition Serv.*, 106 F.3d 405 (8th Cir. 1997). The disqualified retailer must prove, "by a preponderance of the evidence, that the agency's determination was invalid." *Fells v. United*

*States*, 627 F.3d 1250, 1253 (7th Cir. 2010). Since even a single instance of trafficking warrants permanent disqualification, the disqualified retailer must prove that *every* trafficking transaction the USDA raised was legitimate. *See, e.g.*, *Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000); *Mansi v. United States*, No. 4:11-cv-903-ODS, 2013 WL 1189709, at *4 (W.D. Mo. Mar. 22, 2013).

When a party moves for summary judgment, the "court must grant [it] if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). In order to grant the motion, the material facts in the case must be undisputed since the district court may not weigh the evidence. *Cottrell v. Am. Fam. Mut. Ins. Co., S.I.*, 930 F.3d 969, 972 (8th Cir. 2019). Rather, the Court "must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party." *Brand v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 934 F.3d 799, 802 (8th Cir. 2019).

**III.    Discussion**

Not limited to matters previously appraised in the administrative proceedings, the Court finds a genuine dispute of material fact present in this case that prevents summary judgment. First, Abrahem Mahmoud, manager of the Market and son of the Market's owner, flatly denied that the Market has ever trafficked SNAP. His affidavit declares the same. Testifying on behalf of the Market, he issued a total denial noting only he and his family work the registers and that none of them have ever trafficked SNAP benefits. His testimony also described instances in which the Market has instructed customers who appeared to be violating SNAP regulations to leave.

Other jurisdictions have indicated this sort of flat denial will defeat summary judgment in disqualification cases. In *Jerusalem Halal Meats, Inc. v. United States*, 821 F. App'x 299, 301 (5th

Cir. 2020), the U.S. Court of Appeals for the Fifth Circuit affirmed a district court's granting of summary judgment for the government noting that the plaintiff's affidavit did not create a genuine dispute that the SNAP violations occurred because though plaintiff "detail[ed] efforts to avoid violating SNAP regulations, [it] d[id] not definitively state that no violation occurred." *See also McGlory v. United States*, 763 F.2d 309, 311 (7th Cir. 1985) (holding that where there was a "flat denial" of the agency's findings, "the court was required to resolve the conflict in the versions of events" by holding a hearing and making factual findings).

While "a properly supported motion for summary judgment is not defeated by self-serving affidavits," *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006), disregarding self-serving testimony or affidavits occurs primarily where they "clearly contradict[] the plaintiff's earlier testimony under oath and where the plaintiff offers no explanation for the inconsistencies." *Stewart v. Rise, Inc.*, 791 F.3d 849, 861 (8th Cir. 2015); *accord Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (noting virtual unanimity among courts that a party cannot create a genuine issue of fact simply by contradicting his or her own previous sworn statement). At any rate, "[e]ven if this testimony is considered self-serving and given minimal weight, it is nonetheless evidence of record that creates a factual issue, improper for resolution on summary judgment." *Margulis v. Surrey Vacation Resorts, Inc.*, No. 4:14-cv-01131-JAR, 2016 WL 4138243, at *4 (E.D. Mo. Aug. 4, 2016).

While the Court would be faced with a much closer call if the Market only presented its sworn denial of the trafficking, other facts cast unfavorable light on the USDA's determination and solidify a genuine dispute of material fact. It is undisputed that some facts regarding the Market on which the USDA relied for its determination were inaccurate. For instance, it mistakenly believed the Market to be 1200 square feet in size though it is 3200 square feet. Similarly, it

5

believed the Market to have only "a small storage area of approximately 60 square feet" though it has a 760 square feet storage area. It also noted the store had no shopping carts, but at least one can be seen in the photographs contained in the report on which the USDA relied—and the Market has averred it had even more than that one. In making its determination, the USDA also believed that the Market did not sell meat and seafood bundles, which sell at a higher dollar amount than the average item, though the government now acknowledges the Market always has sold them.

The government claims these errors and mistakes are immaterial to the summary judgment determination, but the Court disagrees. The alleged violations at issue in this case were flagged by an algorithmic-type system that found the transactions to be irregular and indicative of trafficking. Once reviewers at USDA looked through the flagged data, they used the details of the Market, including the incorrect ones noted above, "to ascertain if there were justifiable explanations for the store's irregular SNAP transactions." Doc. [1-1]. Undeniably, the Agency's mistaken belief regarding the Market's significantly smaller size—and with a stock area only one tenth the size as in reality—factored into its conclusion. It noted that there was "no indication" that "the store would be likely to have SNAP transaction patterns significantly different from *similar-sized* competitors offering similar food items." *Id.* (emphasis added). In the same way, the Agency used the Market's supposed lack of carts against it multiple times. It noted that the absence of carts made other, innocent explanations "more unlikely" and that carts "would be required for [ ] large dollar transactions" to occur. *Id.*

Lastly, the Market has put forth a more-than-plausible explanation for it appearing to have some irregular transaction patterns. The Market has a policy that, however purportedly legal, operates as an end-run around SNAP's prohibition of covering hot food prepared for immediate consumption. The policy is commonly called some variation of "you buy; we fry." Customers

6

purchase the raw or cold ingredients, and then the store, as a "courtesy," will cook or heat them for the customer to consume.[2] The USDA compared the Market's irregular patterns to those of two nearby gas stations, but the record does not establish whether these businesses offered "you buy; we fry." Though the Agency made the comparison, an Agency official testified that he agreed that "it is not really appropriate to compare" businesses that offer that loophole-courtesy with those that do not. Doc. [53] ¶ 46.

## IV.   Conclusion

"Although the [Agency] has identified substantial evidence in support of its decision, and, although [the Market's] evidence is far from overwhelming, summary judgment is appropriate only if the record shows that there is no genuine dispute as to any material fact." *Betesfa, Inc. v. United States*, 410 F. Supp. 3d 132, 140 (D.D.C. 2019) (internal quotations and alterations omitted). Considering the inaccuracies on which the USDA relied, coupled with the Market's flat denial of trafficking, the Market has submitted sufficient evidence that, when viewed in the light most favorable to it, establishes a genuine dispute of material fact regarding each allegation of trafficking.

In addition, the Court notes that in reaching this decision, it did not rely on the affidavits of undisclosed witnesses that Defendant sought to strike, Doc. [47]. Therefore, the Court will deny Defendant's Motion to Strike Affidavits of Plaintiff's Undisclosed Witnesses as moot in part and without prejudice in part. The Court will resolve any remaining issues regarding the witnesses' ability to testify through pre-trial motions.

---

[2] For example, the Market claims it sells many of these "you buy; we fry" food items for prices that end in ninety-nine cents, including various sized orders of chicken wings. Thus, when customers purchase two of the larger sizes of chicken wings, their total would be a larger dollar amount and end in ninety-eight cents—one of the flagged irregular patterns.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, Doc. [35], is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Strike Affidavits of Plaintiff's Undisclosed Witnesses, Doc. [47], is **DENIED as moot in part and DENIED without prejudice in part**.

Dated this 23rd Day of October, 2020.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE